UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v().                                      Case No. 17-20432
                                        Honorable Victoria A. Roberts

CHERYL OZOH,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S AMENDED
## MOTION FOR COMPASSIONATE RELEASE [ECF No. 87]

**I.    INTRODUCTION**

This matter is before the Court on Cheryl Ozoh's motion and amended motion for compassionate release. [ECF Nos. 84, 87]. Ozoh asks the Court to grant her a compassionate release due to her age, medical conditions, and the COVID-19 pandemic.

The Court held a video hearing on the motion on October 28, 2020. Ozoh consented to proceed in this manner.

The Court **GRANTS** Ozoh's amended motion for compassionate release [ECF No. 87]; her original motion [ECF No. 84] is **MOOT**.

## II. BACKGROUND

Ozoh pled guilty to conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. On September 16, 2019, Ozoh began serving her 42-month sentence. She has served over 13 months. Ozoh is 65 years old and has a history of cocaine addiction and mental health issues.

Ozoh filed a *pro se* motion for compassionate release on April 7, 2020. Her counsel filed an amended motion on May 22, 2020. At the time of her filings, Ozoh was enrolled in the Residential Drug Abuse Program ("RDAP") at FPC Alderson.

The Court originally scheduled a hearing on Ozoh's motion for August 11, 2020. However, before that date, Ozoh asked the Court to postpone the hearing until the end of October so she could finish the RDAP at FPC Alderson. The Court granted Ozoh's request.

Ozoh graduated from the RDAP in late September. Because she finished the RDAP successfully, Ozoh's projected release date is August 28, 2021 pursuant to 18 U.S.C. § 3621(e). However, she is eligible for release to a community corrections facility or home confinement in March 2021, or possibly sooner.

The government opposes Ozoh's release.

## III.   DISCUSSION

The compassionate release statute allows the Court to modify a defendant's term of imprisonment if: (1) she fully exhausts all administrative remedies; (2) she shows both "extraordinary and compelling reasons warrant such a reduction [or release]" and that the reduction or release is consistent with" the Sentencing Commission's policy statements; (3) she is not a danger to any other person or the community; and (4) the factors in 18 U.S.C. § 3553(a) support the reduction or release, to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A)(i); United States Sentencing Guidelines Manual ("USSG") § 1B1.13 cmt. n.1; *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *1 (E.D. Mich. May 15, 2020).

### A.   Ozoh Exhausted Administrative Remedies

There is no dispute that Ozoh exhausted her administrative remedies. Ozoh submitted a request to the Bureau of Prisons ("BOP") for compassionate release on March 28, 2020. The BOP denied her request in an April 22, 2020 letter, stating: "Your medical condition does not meet the criteria for [reduction in sentence]," and "[y]ou do not meet the percentage of time served requirements for the age related categories."

## B. An Extraordinary and Compelling Reason Exists

Section 1B1.13 of the Sentencing Guidelines is the "applicable policy statement" with which the Court must comply when considering a request for compassionate release. Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of the following four categories of "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the BOP. USSG § 1B1.13 cmt. n.1; *Austin*, 2020 WL 2507622, at *1.

Ozoh says extraordinary and compelling reasons exists for her release because she has a high risk of contracting COVID-19 and her age and medical conditions place her at a higher risk of developing a severe illness from COVID-19. Among other things, Ozoh says she suffers from asthma, heart disease, diabetes, hypertension, bilateral osteoarthritis, rheumatoid arthritis ("RA"), and hyperlipidemia. Both the RA and asthma may result in Ozoh being immunocompromised. *See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; https://www.medicalnewstoday.com/articles/rheumatoid-arthritis-and-covid-19*. Further, Ozoh stated during the hearing that she is

not receiving proper medication to treat her RA, something she would be able to do if released from prison.

The government accurately notes that medical records do not support Ozoh's claim that she has diabetes. Nevertheless, the government concedes that Ozoh's other medical conditions, her age of 65, and decades of smoking combine to satisfy the extraordinary and compelling reasons requirement for compassionate release in light of the COVID-19 pandemic. But the government contends that only six inmates at Ozoh's facility have contracted COVID-19, and only three are currently infected. The government contends that Ozoh has less risk of contracting COVID-19 if she remains in custody than if she is released. This is pure speculation and does not factor into the Court's decision.

### C. Ozoh is Not a Danger to the Safety of the Community or Any Other Person

As set forth above, the Sentencing Guidelines limit the availability of compassionate release under § 1B1.13 to non-dangerous defendants. USSG § 1B1.13 cmt. n.1; *Austin*, 2020 WL 2507622, at *1.

When discussing whether an extraordinary and compelling reason exists for Ozoh's release, the government does not address whether Ozoh is a danger to the safety of any other person or to the community. Indeed, it appears the government concedes that Ozoh is not a danger to the

community or any other person because in the section following its discussion of whether an extraordinary and compelling reason exists, it states: "Even when an inmate has shown 'extraordinary and compelling reasons' and demonstrated that she is not dangerous, she is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate." [ECF No. 88, PageID.504]. However, when discussing the § 3553(a) factors, the government summarily states that the nature and circumstances of Ozoh's offense and the need to protect the public from further crimes from her weigh in favor of denying Ozoh's request for release.

Regardless of the government's position, the Court finds that Ozoh is not a danger to the safety of any other person or the community.

Although Ozoh engaged in a conspiracy to distribute oxycodone, her ability to do this in the future will be limited because the underlying conspiracy involved a doctor – Dr. Kafi – who wrote Ozoh and others medically unnecessary prescriptions to fill and sell. Ozoh only became acquainted with Dr. Kafi because he was her attending physician. Dr. Kafi is now in prison. Other than this offense, there is no evidence and no allegations that Ozoh otherwise engaged in this type of conspiracy or

participated in drug trafficking/distribution. Ozoh is 65 years old, and without the availability of her attending physician to operate a pill mill, the Court finds it unlikely that Ozoh will engage in such behavior in the future.

Moreover, Ozoh's actions show that she takes this offense and her sentence seriously. Ozoh has had a lifelong drug addiction. But her insistence to finish the RDAP before proceeding with a hearing on her motion for compassionate release demonstrates her commitment to rehabilitation. The Court commends Ozoh for her dedication and commitment to sobriety and finds that this demonstrates that Ozoh is less likely to re-offend in the future.

Finally, and importantly, Ozoh is a non-violent offender; she has no history of engaging in violence or committing violent offenses. Many of her past offenses dating back to 1977 involve passing bad checks, misdemeanor larceny, and shoplifting.

The Court finds that Ozoh is not a danger to the safety of any person or the community.

### D. The § 3553(a) Sentencing Factors Do Not Make Release Inappropriate

Because Ozoh exhausted her administrative remedies, is not a danger, and her medical conditions and age constitute an extraordinary and compelling reason for compassionate release, the only issue before

the Court is whether the § 3553(a) factors weigh against granting such release. *See United States v. Kincaid*, 802 Fed. Appx. 187, 188 (6th Cir. 2020). They do not.

In addition to the § 3553(a) factors discussed in the section above, the government says that the history and characteristics of Ozoh, the need for the sentence imposed to afford adequate deterrence to criminal conduct, and the need to provide Ozoh with needed medical care or other correctional treatment in the most effective manner all weigh in favor of denying Ozoh's request for release.

The government says "Ozoh has a long history of drug addiction, a lengthy criminal history, and an extraordinary number of failed drug tests while on bond. . ." [ECF No. 88, PageID.504-05]. It says Ozoh "is currently enrolled in the RDAP at FPC Alderson to help better equip her to fight a decades-long battle with drug addiction[,] [and she] was clearly unable to obtain the help she needed while outside of prison[:] She surrounded herself with drug dealers and dirty doctors[ and] [w]hen given an opportunity to engage in outpatient therapy while on bond, she failed miserably. . . . Further, certain therapies, such as group therapy, may be limited or unavailable outside of prison given the precautions needed while the Covid-19 pandemic exists." [*Id.*, PageID.505].

8

The government does not elaborate on any of the § 3553(a) factors other than the nature of her crime and those related to Ozoh's history of drug addiction. The government concludes Ozoh will have minimal success in outpatient therapy. By focusing on Ozoh's drug use and her past participation in outpatient treatment and the RDAP, the government's position essentially boils down to an argument that: the § 3553(a) factors weigh against release, and/or Ozoh should remain in prison, because she needs to continue participating in a structured rehabilitative treatment program. Using this rationale to deny Ozoh's motion would be improper. *See Tapia v. United States*, 564 U.S. 319, 335 (2011) ("[A] court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation.").

Furthermore, Ozoh outlined her release plan at the hearing, which the Court finds to be reasonable. It includes returning to her own home which she owns, becoming involved again in her church and with her family, and continuing drug and mental health treatment.

After reviewing the applicable § 3553(a) factors, the Court finds that granting Ozoh's request for compassionate release is appropriate.

## IV.  CONCLUSION and RELIEF

The Court **GRANTS** Ozoh's amended motion for compassionate release [ECF No. 87]; her original, *pro se*, motion [ECF No. 84] is **MOOT**.

Under 18 U.S.C. § 3582(c)(1), the Court "may reduce [Ozoh's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A).

The Court **REDUCES** Ozoh's term of imprisonment to **TIME SERVED**.

Because Ozoh is a non-violent offender who does not pose a risk to the community, and because the probation department's resources are strained due to COVID-19, the Court **VACATES** the 24 months of supervised release it previously imposed.

Instead, the Court imposes an amended 12-month term of supervised release.  There are no special conditions regarding drug testing and/or treatment and the mandatory drug testing provision is suspended.  The Court will enter an Amended Judgment setting forth the precise conditions of supervised release.

Upon release from FPC Alderson, Ozoh **must** quarantine at her residence for 14 days.

**IT IS ORDERED**.

                                              s/ Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: October 28, 2020